# Augustus Crane, Jr., and Albion K. Parris, Copartners, trading as Crane, Parris & Co., v. The Fourth Street National Bank, Appellant.

*Banks and banking — Clearing house — Check — Improper payment of check.*

Plaintiffs, the owners of a draft on the F. National Bank, indorsed the draft specially to the K. National Bank for collection, stating in the indorsement that its purpose was the collection of the amount for their own credit. Both the F. and K. banks were members of a clearing house association. The draft was sent, with other checks and drafts held by the K. bank against the other national banks of the city, to the clearing house for collection at the morning clearing. The process of passing the clearing house was begun in the usual manner. The balances due to and from the several banks represented were ascertained, and the exchange of packages entered upon. It was found that there was a large balance due from the K. bank to be paid in cash. At half-past ten o'clock that morning the K. bank was closed by the action of the United States bank examiner. The balance was not paid or any part of it. The clearing house demanded and received the amount of the draft from the F. bank, and appropriated it to the payment of the indebtedness of the K. bank to the clearing house committee. *Held,* (1) that the effect of the indorsement was to make the K. bank the agent of the indorsers for the single purpose named, and that the title to the draft passed only so far as was necessary for the purposes of the agency created by the indorsement, and the ownership of the proceeds remained all the while in the indorsers; (2) that as the balance due by the K. bank had not been paid, the bank could not clear, and what had been done provisionally for that purpose became ineffectual, and ceased to have any legal significance; (3) that the payment by the F. bank was to one who was a stranger to the draft, and who had no interest in the proceeds, and no authority to act as agent for the owners; (4) that such a payment was no defense by the F. bank in an action brought

against it by the owners of the draft, inasmuch as it had notice by the indorsement on the draft that the clearing house had no title.

*Banks and banking—Clearing house—Currency.*

A clearing house is not a mutual bank organized and operated by the associated banks, but is a device to simplify and facilitate the work of the banks in reaching an adjustment and payment of the daily balances due to and from each other, at one time and place, on each day. In practical operation it is a place where the representatives of all the national banks in the city meet, and under the supervision of a competent committee or officer selected by the associated banks settle their accounts with each other, and make and receive payment of balances, and so "clear" the transactions of the day for which the settlement is made. These payments may be made in cash or by such form of acknowledgment or certificate as the associated banks may agree to use in their dealings with each other as the equivalent or representative of cash. The use among themselves of a certificate or other representative of money to save the inconvenience and labor of counting and recounting several millions of dollars daily is not the issuing of currency. It is not a violation of the law. It does not convert the clearing house into a bank of any sort. Per WILLIAMS, J.

Argued January 9, 1896. Appeal, No. 430, Jan. T., 1894, by defendant, from judgment of C. P. No. 2, Philadelphia Co., Dec. T., 1894, No. 138, for want of a sufficient affidavit of defense. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed. MITCHELL, J., dissents.

Assumpsit on a draft. Before PENNYPACKER and SULZBERGER, JJ.

Plaintiffs' statement was as follows :

The plaintiffs claim to recover in this suit from the defendant the sum of $1,990, with interest from the 20th day of March, 1891, upon the following cause of action:

1. Plaintiffs aver that at the close of business hours on the 19th day of March, 1891, they mailed at Washington, D. C., a letter to the Keystone National Bank, of which John Hayes was then cashier, inclosing therein for collection a draft, of which the following is a copy :

" THE ANGLO-CALIFORNIA BANK, LIMITED, No.38,886,
"SAN FRANCISCO, March 13th, 1891.

"Pay to the order of Charles Early ($1,990) nineteen hundred and ninety dollars.

"P. N. LITHENTHAL, Manager.
"F. E. BECK, Accountant.
"The Fourth Street National Bank, Philadelphia."

Indorsed: "Charles Early." "Pay to the order of Jno. Hayes, Cashier, for a/c Crane, Parris & Co., Washington, D. C." Also stamped upon the back of the draft, " Received payment through the Clearing House." And plaintiffs specifically aver that at the time the letter inclosing said draft was mailed they were not aware of the insolvency of said Keystone National Bank; that they were not indebted to said Keystone National Bank in any sum whatsoever, nor have they been so indebted at any time since ; that no advances were made by said Keystone National Bank on account of said draft, nor did plaintiffs draw against said Keystone National Bank on account of the proceeds thereof, nor had said Keystone National Bank any beneficial interest therein; but, on the contrary, said draft was sent to and held by it solely for the purpose of collecting the same for plaintiffs, to whom only it belonged.

2. Plaintiffs are informed and believe, and therefore aver, that the Clearing House Association of the City of Philadelphia is an association of national banks of that city, having a central office therein, whereat the exchanges between said banks are effected daily, and the course of business adopted by agreement of the members thereof and usually and constantly carried on is substantially as follows :

At or about 8:30 o'clock A. M. of each day each national bank member thereof sends by its runner or agent to said clearing house all checks and drafts received by it since the last clearance, drawn upon any other bank, member of said association, or which clears through it, and receives in return all checks and drafts drawn upon it deposited with any other bank member of said clearing house, or which clears through it, and which said checks and drafts are then and there delivered to the runners or agents of the respective banks upon which the same are drawn, inclosed in sealed envelopes, upon the promise and agreement of said banks respectively that they will at or before 12 o'clock of that day pay to said clearing house association in cash the difference between the amount of the checks and drafts so deposited by it and the amount of the checks and drafts so drawn upon it as aforesaid, and at that time and out of the moneys so received said clearing house association pays in cash to the banks found to be creditors upon the clearances the sum which is so found to be due them thereon.

3. Plaintiffs are informed and believe, and therefore aver, that on the morning of the 20th of March, 1891, said Keystone National Bank made up as usual for exchange in clearance at the clearing house, of which it was a member, packages of exchanges on other banks amounting in the aggregate to $70,005.46, among which packages was one containing exchanges drawn on the Fourth Street National Bank, the defendant herein, amounting in the aggregate to $3,728.70, one of which was a draft for $1,990, a copy of which is set forth in the first paragraph of this statement. These sealed envelopes or packages were duly delivered to the runners of the banks on which they were drawn in the manner usual at such clearances, and the runners of said Keystone National Bank received from the runners of other banks sealed envelopes containing exchanges drawn against said Keystone National Bank, among which was a package presented by the runner of the Fourth Street National Bank (also a member of said clearing house association), containing exchanges drawn against said Keystone National Bank, amounting in the aggregate to $3,862.94. That upon the settlement of exchanges then and there made (which clearance took place at half after eight o'clock in the morning of said day) there appeared a balance of $47,029.75 on that morning's exchanges against the Keystone National Bank, and a balance of $126,347.60 against said Fourth Street National Bank. The runners of each bank, except the Keystone, present at said clearance, so soon as the same was made, returned to their respective banks, carrying with them the envelopes or packages so received by each, and one Edward A. McKinley, who represented the Fourth Street National Bank as settling clerk at the clearing house that morning, brought back to said bank, inter alia, the envelope received from the runner of the Keystone National Bank containing drafts drawn upon it aggregating $3,728 as aforesaid, and including said draft of $1,990 referred to in paragraph 1 of this statement. The settling clerk of the Keystone National Bank, however, after receiving from the other banks the packages containing exchanges aggregating $117,035.21, did not return with them to his bank, but left them in the custody of the manager of the clearing house association until said Keystone National Bank should pay the sum of $40,728.75, in which amount it was debtor on the morning's clearance. (The

reason such packages were left by the Keystone National Bank in the custody of the clearing house manager was this : Under article XVII. of the clearing house rules, all banks were required to deposit collateral security for the payment of their daily balances, but in December, 1890, the Keystone National Bank requested that all security held under this article for the payment of its daily balances should be transferred to what was known as the loan certificate account, so that the Keystone National Bank could receive further advances upon this security. After this date the security for the payment of the daily balances due at the morning exchange was an agreement of the Keystone National Bank that its messenger, after receiving the packages from the creditor banks, should leave these packages with the clearing house manager as security that the debtor balance due on that settlement should be paid by the Keystone National Bank in cash before twelve o'clock on that day, and this agreement was acted on daily from the date it was made until the suspension of the bank.) The proceedings above narrated were completed about half after nine o'clock in the morning of the day mentioned, and after the several runners had returned to their respective banks and delivered the respective packages so received by them, word was received at the clearing house, to wit, about half after ten on said morning, that said Keystone National Bank was closed by William P. Drew, examiner of national banks, duly appointed and acting therein by virtue of the authority of the order of the comptroller of the currency of the United States, duly issued and pursuant to the statutes in such case made and provided. Whereupon this is what took place : The manager of the clearing house notified the several banks which had presented exchanges aggregating $117,035.21 against the Keystone National Bank that the same had not been delivered over to the Keystone National Bank, but were in the custody of the clearing house, and requesting them to at once take back the same and substitute cash for the credits which had been given them at the morning clearance on account thereof. This the banks all did at about eleven o'clock that morning, and the Fourth Street National Bank paid in cash to the manager of the clearing house $3,862.94, and received from him checks and drafts aggregating that amount, which the Fourth Street National

Bank had presented against the Keystone National Bank at the morning clearance as aforesaid. This left the Keystone National Bank a creditor bank in the sum of $70,005.46, made up in part, as hereinbefore set forth, of said draft of $1,990 described in paragraph 1 of this statement, as all the drafts which had been presented against it were withdrawn and received back again by the banks so presenting them. This was the status of affairs at half after eleven o'clock in the morning of March 20, 1891. The Fourth Street National Bank having thus received said draft for $1,990, afterwards, with knowledge of the insolvency of said Keystone National Bank, and with knowledge that the plaintiffs herein were the true owners of said draft and that the Keystone National Bank had held it merely for collection, charged the amount thereof against the Anglo-California Bank, Limited, but instead of paying the same to the plaintiffs herein, as of right it should have done, handed over said $1,990 to the manager of the clearing house; that is to say, at noon of that day, the said Fourth Street National Bank paid in cash to the manager of the clearing house $126,347.60, the difference between the exchanges it had presented that morning against other members of the clearing house, exclusive of the Keystone National Bank (credit being taken for the cash substituted for exchanges presented against said Keystone National Bank and subsequently withdrawn), and all checks presented by other banks at said clearance against said Fourth Street National Bank, including the checks presented by the Keystone National Bank, among which was said draft for $1,990, and by such act it at that time paid into the hands of the manager of the clearing house the amount of said draft. Other debtor banks made like settlements. The result of the transactions above narrated was that there was left in the hands of the manager of the clearing house, after payment of the balances due creditor banks other than the Keystone, the sum of $70,005.46, made up in part of said draft of $1,990 so paid to him by said Fourth Street National Bank after knowledge of the insolvency of the said Keystone National Bank, which sum was appropriated by him on account of certain antecedent indebtedness of said Keystone National Bank to said clearing house. These proceedings were not in accordance with the rules of the clearing house, a copy of which is hereto

annexed and made part hereof, and even if said rules had so provided, the rights of plaintiffs could not be injuriously affected thereby.

4. Plaintiffs aver that the indorsement upon said draft for $1,990 destroyed its negotiability except for purposes of collection, and gave notice to the Fourth Street National Bank that it was the property of Crane, Parris & Co. and that the Keystone National Bank had no title thereto, but was constituted an agent for its collection. That the Fourth Street National Bank had notice at or about ten o'clock on the morning of March 20, 1891, that the Keystone National Bank was closed by order of the Comptroller of the Currency, and was civilly dead as far as the right to exercise the functions of a bank are concerned, and that its authority to collect said draft of $1,990 was thereby revoked. That subsequent thereto said Fourth Street National Bank charged up the amount of said draft against the Anglo-California Bank, Limited, the drawer thereof, and from that moment held said sum of $1,990 for the use of Crane, Parris & Co. the plaintiffs herein. That its subsequent payment of that sum to the manager of the clearing house in the manner hereinbefore stated was without authority of the plaintiffs herein, and was no acquittance of the debt. That said Fourth Street National Bank, although requested so to do, has refused to pay over to the plaintiffs herein the amount of said draft, wherefore plaintiffs claim that said defendant is justly indebted etc.

The affidavit of defense was as follows :

Richard H. Rushton, being duly sworn according to law, deposes and says : I am the cashier of the Fourth Street National Bank. The statement filed by the plaintiffs is incorrect in some particulars, and the true nature of the transaction was as follows : The clerks of the respective banks constituting the Philadelphia Clearing House met in the morning of the 20th day of March, 1891, at half-past eight o'clock. The exchange clerk of this defendant took with him envelopes containing the checks and drafts drawn upon the other banks belonging to the clearing house and received in exchange envelopes containing the checks and drafts held by other banks upon the Fourth Street National Bank. The aggregate of the checks and drafts payable and receivable having been footed up, a statement of

account was thereupon prepared, showing the separate items of the checks and bills payable and receivable, payable to or by each of the other banks, and the balance was then struck, which thereupon became an absolute obligation by or to those banks, by or to the clearing house association. The relations of this bank to the clearing house association, as the result of the exchange of checks or bills payable or receivable, were fixed and settled at the time when such exchange took place, and the balance with the clearing house on that day, which amounted to $126,347.60 against the Fourth Street National Bank, became thereupon a fixed liability to the clearing house, and was paid and settled in the course of the morning. The exchange clerk brought back to the bank the receipts for packages delivered to the exchange clerks of the other banks, together with the packages delivered to him by the clerks of the other banks, and the packages brought back by him were delivered to the paying teller or his assistant, and compared with the accounts of each depositor, and then by him turned over to the general bookkeeper, and charged against the proper accounts.

The package of the Keystone National Bank upon that morning included the draft of the plaintiffs, but as between this defendant and the Keystone National Bank all of the drafts or checks received from the Keystone National Bank were paid when the exchange of packages took place in the clearing house, and the settlement was stated with this bank by the clearing house, which thereupon became obligations as between the clearing house and this defendant, in which the Keystone National Bank no longer had any further interest. So absolutely is this the case, that even if the account upon which any one of the checks or drafts had been drawn had proved, upon inspection, to be overdrawn, the remedy of this defendant would have been to send such draft or check to the Keystone National Bank, and not to the clearing house. This defendant therefore avers that the draft sent to the Keystone National Bank for collection was in fact paid by this defendant in the morning settlement, which occurred before the announcement of the failure of the Keystone National Bank.

This defendant further says that the statement of what occurred after the closing of the Keystone Bank by the bank examiner is not entirely accurate. The amount of $3,862.94,

paid by the Fourth Street National bank to the manager of the clearing house, had nothing to do with the draft of the plaintiffs, but as the checks and drafts handed in by the Fourth Street National Bank had been accepted as cash it became necessary to make them good so soon as it was learned that the Keystone Bank had failed. The draft of the plaintiffs for $1,990 had been received in the morning clearing, at half-past eight o'clock, and, as already stated, had been paid for, as between the bank and the clearing house, at the time it was received, and it had been examined by the paying teller or his assistant, and the account, having been found good, had been charged up to the account of the Anglo-California Bank, Limited, probably by ten o'clock, but certainly before the failure of the Keystone National Bank had been learned. It is not correct to say, however, that the amount was handed over to the clearing house after it had been thus charged up, because, as already stated, the settlement was effected when the packages were exchanged, and the subsequent payment of $126,347.60, being the balance of the exchanges to and against the Fourth Street Bank, was the balance shown at the morning clearing, in which the draft of the plaintiffs had been counted as cash, and so far as the draft of the plaintiffs was concerned, nothing was paid by the Fourth Street National Bank on account thereof, after the knowledge of the insolvency of the Keystone Bank. In other words, the Fourth Street Bank on that day received credit in the morning exchange for all the checks and drafts presented by it as so much cash, and was charged with all the checks and drafts delivered to it, including that of the plaintiffs, as so much cash. The balance of $126,347.60 was the balance then appearing. By the failure of the Keystone Bank the checks and drafts handed in by the Fourth Street Bank, and which had been accepted as cash, proved worthless, and thereupon the Fourth Street Bank made them good. In effect, therefore, the transaction was the same as if, at half-past eight on that morning, the Fourth Street Bank had received payment in cash of all the checks and drafts presented by it, including those drawn upon the Keystone National Bank, and had then paid to the manager of the clearing house, in cash, the amount of all the checks and drafts drawn against the Fourth Street Bank. Instead of the passing of the money, the amounts receivable were credited

against the amounts payable, and the balance became immediately payable in cash. Subsequently, upon the failure of the Keystone Bank, the amounts receivable, aggregating $3,862.94, were taken up and made good.

This defendant submits, therefore, that in the regular course of business, without notice, and before the insolvency of the Keystone Bank, it accepted and paid to the clearing house association, as the authorized agent of the Keystone National Bank, the amount of the plaintiff's draft, and is, therefore, not now liable to repay the same.

The court in an opinion by Sulzberger, J., entered judgment for want of a sufficient affidavit of defense.

*Error assigned* was above order.

*Samuel Dickson,* for appellant.—The payment to the clearing house is a sufficient defense : Crane v. Clearing House, 32 W. N. C. 358 ; Yardley v. Philler, 62 Fed. Rep. 645.

The case of Yardley v. Philler, 62 Fed. Rep. 645, was decided upon the ground, which was affirmed both in the statement of claim and affidavit of defense, that a complete clearance had been effected at 8.30 A. M. of the morning of March 20, 1891, and the case of Crane v. The Clearing House Committee, 32 W. N. C. 358, went upon the ground that the amount of the draft in suit had been paid to the Keystone Bank in the morning clearance, and that the holders had lost by reason of the insolvency of the bank which they selected as their agent, and to the receiver of that bank they must look for payment.

*H. Gordon McCouch,* for appellees.—The indorsement upon the draft in question destroyed its negotiability except for purposes of collection, and gave notice to all parties through whose hands it passed that it was the property of Crane, Parris & Co. The Keystone Bank did not acquire title thereto, but was merely consituted an agent for its collection : Sweeney v. Easter, 1 Wall. 173 ; Fifth Nat. Bank v. Armstrong, 40 Fed. Rep. 46.

By charging said draft to the account of the drawee, the defendant thereby received that much money for the use of Crane, Parris & Co., the true owners of said draft : Seventh Nat. Bank v. Cook, 73 Pa. 483.

The insolvency of the Keystone Bank operated as a revocation of its authority to collect, and subsequent payment of the draft to the manager of the clearing house for account of said bank with knowledge of its insolvency was not an acquittance of the debt to plaintiffs : Hackett v. Reynold, Lamberton & Co., 114 Pa. 328 ; Bank v. Hubbell, 117 N. Y. 384 ; Bank v. Bank, 76 Ind. 561 ; Bank v. Bank, 148 Mass. 553 ; Bank v. Bank, 139 Mass. 518.

Whenever by express agreement of the parties a subagent is to be employed by an agent to receive money for the principal, or where an authority to do so may fairly be implied from the usual course of trade or the nature of the transaction, the principal may treat the subagent as his agent, and when he has received the money may recover it in an action for money had and received : Wilson v. Smith, 3 Howard, 763 ; Bank of the Metropolis v. Bank of New England, 1 How. 234 ; Bank v. Bank, 76 Ind. 561 ; Bank v. Hubbell, 117 N. Y. 384.

OPINION BY MR. JUSTICE WILLIAMS, February 17, 1896 :

This appeal is from a judgment entered for want of a sufficient affidavit of defense, and the only question raised is that of the sufficiency of the allegation of payment which is the only defense set up in the affidavit.

The plaintiffs were on the 19th day of March, 1891, the owners of a draft drawn by the Anglo-Californian Bank on the Fourth Street National Bank of Philadelphia. On that day they indorsed the draft specially to the Keystone National Bank for collection, stating in the indorsement that its purpose was the collection of the amount for their own credit. The effect of this indorsement was to make the Keystone National Bank the agent of the indorsers for the single purpose named. The title to the draft passed only so far as was necessary for the purposes of the agency created by the indorsement, and the ownership of the proceeds remained all the while in the indorsers. The Keystone National Bank and the Fourth Street National Bank were both members of the clearing house association. On the morning of the 20th of March, this draft was sent with the other checks and drafts held by the Keystone Bank, against the other national banks of the city, to the clearing house for collection at the morning clearing. The process of passing the

clearing house was begun in the usual manner. The balances due from and to the several banks represented were ascertained and the exchange of packages entered upon. It was then ascertained that while the Keystone Bank was credited with checks and drafts presented by it amounting to $70,005.46, it was debited with checks and drafts presented against it amounting to $117,035.21. The balance due from it to be paid in cash was therefore $47,029.75 and the bank could not clear until this sum was actually paid at the clearing house. At half past ten o'clock that morning the bank was closed by the action of the United States bank examiner. The balance was not paid or any part of it. The bank could not clear for this reason, and what had been done provisionally for that purpose became ineffectual and ceased to have any legal significance. The draft on the Fourth Street National Bank had not been collected and it remained the property of Crane and Parris as fully as before. The clearing house had no right to demand or receive the amount from the drawee unless it did so in completing the day's clearing for the Keystone Bank, and if it had demanded and received it for that purpose it would have held the money for the owners of the draft and been accountable to them for it. But it did not assist the Keystone Bank to clear on that day. It demanded and received the amount of this draft from the defendant and appropriated it to the payment of the indebtedness of the Keystone Bank to the clearing house committee.

This is the payment set up in the affidavit. It is a payment to one who was a stranger to the draft and who had no interest in the proceeds, and no authority to act as agent for the owners. It should be noted that no question is raised by the defendant as to its liability to the holder. It rests upon the legal value of its payment of the money to the clearing house. If this was a good payment then a defense is set out in the affidavit. If it was not a good payment then the judgment appealed from was properly entered. No reason has been suggested for supposing that the clearing house had acquired, or could acquire, a title to the draft of Crane and Parris by the accident of having it in their possession. If the Keystone Bank had attempted to make title to the clearing house by indorsing the draft over to it, this would have been wholly ineffectual; for notice of the limited interest of the bank was written into the indorsement by the

plaintiffs, and any party taking as the indorsee of the bank would be bound to take notice of its want of title and its inability to confer one.

The Fourth Street Bank had notice therefore, by the indorsements on the draft, that the clearing house had no title, and that payment made to it would be made at the risk of the bank. If the clearing house had paid over the proceeds to the owners this would have discharged the drawee but the risk of this was the risk assumed when the bank paid the draft to one who was a stranger to it. The learned judge of the court below was right in his view of the transaction and of the worthlessness of the payment set up as a defense against the real owners. In one respect only, and that an immaterial one so far as this case is concerned, do we find ourselves constrained to differ from the learned judge.

We do not regard the clearing house as a mutual bank organized and operated by the associated banks. It is as we have said in Philler v. Patterson, 168 Pa. 468, an ingenious device to simplify and facilitate the work of the banks in reaching an adjustment and payment of the daily balances due to and from each other, at one time and place, on each day. In practical operation it is a place where the representatives of all the National Banks in this city meet, and under the supervision of a competent committee or officer selected by the associated banks, settle their accounts with each other, and make and receive payment of balances, and so "clear" the transactions of the day for which the settlement is made. These payments may be made in cash or by such form of acknowledgment or certificate as the associated banks may agree to use in their dealings with each other as the equivalent or representative of cash. The use among themselves of a certificate or other representative of money to save the inconvenience and labor of counting and recounting several millions of dollars daily is not the issuing of currency. It is not a violation of the law. It does not convert the clearing house into a bank of any sort.

The judgment is affirmed.

MITCHELL, J., dissents.