ROBERT L. LEACH, State Superintendent of Banking, Appellee, v. CITIZENS STATE BANK OF WAUKON et al., Appellees; L. A. ANDREW, Receiver, Appellant.

**TRUSTS:** Enforcement—Acceptance of Draft—Effect. A *cestui que trust* who accepts from the trustee a certificate of deposit in lieu of the actual trust funds, and later accepts a draft in lieu of the certificate of deposit, thereby cancels the trust relation, and substitutes therefor the relation of debtor and creditor.

Headnote 1: 7 C. J. p. 751 (Anno.)

*Appeal from Allamakee District Court.*—H. E. TAYLOR, Judge.

NOVEMBER 22, 1927.

This appeal involves a controversy between the receiver of the Citizens State Bank of Waukon, and Albert Berg and the First National Bank of Waukon, claimants, who seek preferential payment of their claims. The judgment below was in favor of claimants, and the receiver appeals.—*Reversed and remanded.*

*G. B. Richter,* for appellant.

C. N. Houck, W. M. Strand, W. A. Smith, and H. Haehlen, for appellees.

STEVENS, J.—Albert Berg and the First National Bank of Waukon each held a chattel mortgage upon some farm imple- ments and live stock, executed to secure the indebtedness of one Oscar Anderson to the respective parties. The mortgagor had either abandoned, or was neglecting to properly care for, the property. For the better preservation of their security, the mortgagees, who were parties to an action then pending in the district court of Allamakee County for the foreclosure of the Berg mortgage, entered into a stipulation for the sale of the mortgaged property at public auction on November 21, 1924, agreeing that the proceeds of such sale be, by the terms thereof, turned over to the clerk of the district court, to be held by him until a controversy between them as to the priority of their re- spective mortgages could be finally adjudicated and determined in the pending action. W. H. Niehaus, president of the Citizens State Bank, was agreed upon as the clerk of the sale. The sale yielded something less than $1,200, $387.65 of which was paid in cash. Niehaus was informed of the stipulation, and directed to turn the proceeds of the sale over to the clerk. There was con- siderable delay in the payment of the outstanding accounts, and Niehaus placed the money received, as clerk of the sale, in the bank of which he was president, in a special account. On Jan- uary 24, 1925, Berg's attorney went to the Citizens State Bank, to ascertain what amount had been collected, and to request Niehaus to deposit the amount on hand with the clerk. After the payment on that day of an account of $122 by the president of the First National Bank, the total amount in the Citizens State Bank was $1,181.32. Niehaus explained to the attorney that he could not turn the cash over to him, and, in lieu there- of, gave him a certificate of deposit, payable to the clerk of the district court, for the amount. This certificate was immediately delivered to the clerk, who gave the attorney a receipt therefor. The clerk was, however, unable to present the certificate for pay- ment on the day it was received, which was Saturday, during banking hours. On Monday morning following, he took the certificate to the First National Bank, and asked credit in his account as clerk therefor. Both the president and the cashier

of the bank informed him that his account would be credited therewith, subject, however, to the payment of the certificate. The clerk requested the bank to present the certificate to the Citizens State Bank at once for immediate payment. He was informed by the officers of the bank that, unless the drawer had checks drawn on the National Bank which it could surrender in payment, the best that could be done would be to accept a draft for the amount. The reason for this was a custom and agreement existing between the banks that, in making clearance, the debtor bank would make payment by draft on Chicago.

The representative of the First National Bank who presented the certificate for payment did not demand cash, but accepted a draft drawn on the Illinois Merchants Trust Company. Before the draft could be paid in regular course, the Citizens State Bank closed its doors, and its assets were taken over by the state superintendent of banking, as receiver. Thereafter, the mortgagees filed a joint claim in the receivership, setting up in detail the transactions above mentioned, and asking the court to direct the receiver to turn over the amount received by Niehaus from the sale of the mortgaged property to the clerk of the district court, to be held by him, as they had previously stipulated. The court so ordered, and the receiver appeals.

It is the claim of counsel for appellee, and for all of the purposes of this case it may be conceded, that the proceeds of the sale were held by the Citizens State Bank in trust for the parties ultimately found by the court to be entitled thereto. With this assumption, the sole question remaining for decision is: Was the relation of the beneficiaries of the trust fund changed or altered by the transactions detailed, from that of *cestui que trust* and trustee, to that of debtor and creditor only?

The clerk of the district court and the officers of the First National Bank were alike suspicious of the financial soundness of the Citizens State Bank. The clerk, who had no other interest in the matter than as stakeholder for the parties, urged the immediate presentation of the certificate delivered by him to the bank, for payment in cash. During the same day, the president of the First National Bank inquired of the Illinois Merchants Trust Company, by telephone, as to whether the draft would be paid on presentation. He was informed that it would be paid

in due course only, and that the Chicago bank would assume no other responsibility in the matter.

The principals in the several transactions were Berg and the First National Bank. The attorney for the former accepted the certificate and delivered it to the clerk, and the bank, when it was turned over to it for credit by the clerk, refused to demand payment thereof in cash, but, in obedience to a custom or agreement existing between the banks, accepted the draft referred to. The question here presented has recently been many times before this court, and it is unnecessary to discuss the same at length. Notwithstanding that the First National Bank had a right to demand payment of the certificate in cash, it refused to do so, and exchanged it for a draft on the Chicago bank. Thereafter, the relation between the parties was clearly that of creditor and debtor. The trust fund was surrendered, and, in the usual and ordinary course of business, passed into the general assets of the bank. It is not claimed that the officers of the First National Bank were not advised as to the nature of the account in the Citizens State Bank. Indeed, this appeared on the face of the certificate.

The rule and the reasons therefor are fully discussed in the following recent decisions of this court, and further discussion of the question is not necessary. *Leach v. Mechanics Sav. Bank*, 202 Iowa 899; *Leach v. Iowa State Sav. Bank*, 202 Iowa 894; *Leach v. Battle Creek Sav. Bank*, 203 Iowa 507; *Leach v. Citizens' State Bank*, 203 Iowa 782; *Valentine v. Andrew*, 203 Iowa 463; *Danbury State Bank v. Leach*, 201 Iowa 321; *Leach v. Iowa State Sav. Bank*, 202 Iowa 894. The cited cases are decisive of the question.

It follows that the order and judgment of the court below awarding preferential payment of the claims was erroneous. The cause will be remanded to the district court, with directions that the order be modified in harmony with this decision.—*Reversed and remanded.*

EVANS, C. J., and FAVILLE, KINDIG, and WAGNER, JJ., concur.