L. A. ANDREW, Superintendent of Banking, Plaintiff, v. FARMERS & MERCHANTS SAVINGS BANK OF MORAVIA, Defendant.

ARTHUR LEACH, Administrator, Substituted Appellant, v. L. A. ANDREW, Receiver, Appellee.

No. 41418.

NOVEMBER 15, 1932.

REHEARING DENIED APRIL 6, 1933.

Valentine & Valentine and Chas. S. White, for appellant.

John Fletcher, Atty. Gen., and Elgin & Simmons, for appellee.

WAGNER, J.—It is necessary for the determination of the questions presented to mention the material facts, which we will now proceed to do. During the year 1930 and for a considerable period of time prior thereto, the claimant Leach was engaged in the contract business of moving dirt on primary roads. Immediately preceding the transaction involved in this litigation, he was engaged in the prosecution of his work at Independence, Missouri. It was his purpose to file bids with the Iowa state highway commission for two contracts which were about to be let in Mahaska and Wayne counties. At and before that time, the claimant was transacting his banking business with the United States National Bank in Omaha, the city of his residence. Some years before, he had done some banking business with the Farmers & Merchants Savings Bank of Moravia. Moravia was quite convenient for him to visit on his journey from Missouri to view the two highway projects upon which he expected to place bids. He knew that he would need certified checks to file with his bids with the highway commission. His trip from Missouri to Iowa was made on June 23, 1930, and he stopped at the Farmers & Merchants Savings Bank of Moravia, advised the cashier that he was going to bid on some work in Iowa and would need certified checks. The result of the transaction was that the claimant wrote his check for $5,225 upon the United States National Bank of Omaha, payable to the Farmers & Merchants Savings Bank of Moravia. For convenience, we will hereinafter call the United States National Bank of Omaha, the Omaha Bank, and the Farmers & Merchants Savings Bank of Moravia, the Moravia Bank. The cashier of the Moravia Bank telegraphed the Omaha Bank relative to the check and ascertained that it was good; that is, that it would be honored. Thereupon, the Moravia Bank issued unto the claimant a deposit slip for $5,225, and the claimant forthwith drew two checks, one for the Mahaska county project, payable to the order of the Iowa state highway commission for $3,200, and the other for the Wayne county project, payable to the order of the Iowa state highway commission for $2,025. These checks were certified by the cashier of the Moravia Bank and delivered to the claimant. The check for $5,225 issued by the claimant to the Moravia Bank upon the Omaha Bank was indorsed by the Moravia Bank and sent to

its correspondent, the Central National Bank & Trust Company of Des Moines. Said check was paid in clearing and the correspondent bank gave the Moravia Bank credit for the same upon its books.

It appears that it was the understanding between the claimant and the cashier of the Moravia Bank that, if the claimant was not the successful bidder for the prospective projects, or either one of them, the bank would issue a draft payable to the claimant upon surrender of the certified check, or checks. Upon this point, the claimant testified:

"He (the cashier) said as soon as I got through with these checks to send them back and he would send me a draft."

The cashier testified: "I believe he (the claimant) said further that after the certified checks had served the purpose he was to send those certified checks back to our bank and we were to issue a draft for them when presented."

The claimant's bids for the work were not accepted by the Iowa state highway commission, and the certified checks were returned by the commission to the claimant at Independence, Missouri. On June 28th, the claimant inclosed the two checks in a letter to the Moravia Bank, saying therein:

"We are herewith enclosing the two certified checks, totaling $5,225.00 for which we would appreciate a return by draft."

On receipt of this letter by the Moravia Bank on June 30, it issued a draft upon its correspondent bank, the Central National Bank & Trust Company of Des Moines, for the sum of $5,225 in favor of the claimant. This draft was issued the last day that the Moravia Bank was open for business, and, because of its closing, the draft in favor of the claimant has not been paid. At the time of its closing, the Moravia Bank was heavily indebted on rediscounts to its correspondent bank in Des Moines, and said correspondent bank applied the balance shown on its books at that time upon said indebtedness. It thus appears that none of the proceeds of the original $5,225 check drawn by the claimant in favor of the Moravia Bank has come into the hands of the receiver. One other thing may be material as we proceed: On June 23, the date of the original transaction, the Moravia Bank had on hand in cash only the sum of $3,351.80, and at no time after that, until the bank closed, did

it have in cash a sum in excess of $2,936.07, and on the day of its closing, it had in cash only the sum of $419.32.

Appellant's contention is that the Moravia Bank held the money for which he makes claim as a trust fund, upon the theory **that the deposit made was a specific deposit**; that is, that the money was deposited therein for a specific or particular purpose. We have held that a specific deposit exists when money or property is given to a bank for some specific or particular purpose, "as a note for collection, money to pay a particular note, or property for some specific purpose." See Officer v. Officer, 120 Iowa 389, 94 N.W. 947, 948, 98 Am. St. Rep. 365; In re Receivership of Security Savings Bank of Perry, 205 Iowa 171, 217 N. W. 831; Miller v. Andrew, 206 Iowa 957, 221 N. W. 543 (and cases therein cited). It is well settled that a deposit for a specific purpose creates a trust relationship between the depositor and the bank. See In re Receivership of Security Savings Bank of Perry, 205 Iowa 171, 217 N. W. 831; Miller v. Andrew, 206 Iowa 957, 221 N. W. 543 (and cases therein cited). However, it is apparent, under the multitude of pronouncements by this court, that, before the claimant can recover upon the trust fund theory, he must show that the trust relationship existed at the time of the closing of the bank; that by reason of the trust, the funds of the bank have been thereby augmented and he must show by presumption, or otherwise, that the trust fund passed into the hands of the receiver. The evidence in the instant case conclusively shows that none of the proceeds derived from the $5,225 check drawn by the claimant upon the Omaha Bank, in favor of the Moravia Bank, passed into the hands of the receiver.

Moreover, it may be conceded that when the deposit was originally made by the claimant with the Moravia Bank, the bank then held the funds for the specific purpose of taking care of the certified checks issued concurrently therewith; but said specific purpose terminated when the bank received information from the claimant that the state highway commission, the payee of the checks, had surrendered the same to the claimant. Upon the surrender of the certified checks by the state highway commission to the claimant, the deposit then was subject to the order of the claimant, and in compliance with his demand, he received from the Moravia Bank a draft for the amount of the deposit. From that moment, the trust relationship was at an end and the relationship then existing was clearly that of creditor and debtor. See Leach v. Citizens State

Bank of Waukon, 204 Iowa 954, 216 N. W. 267; Valentine v. Andrew, 203 Iowa 463, 212 N. W. 674; Leach v. Battle Creek Savings Bank, 202 Iowa 875, 211 N. W. 527; Leach v. Iowa State Savings Bank of Sioux City, 204 Iowa 497, 212 N. W. 748, 215 N. W. 728. In Leach v. Citizens State Bank of Waukon, 204 Iowa 954, 216 N. W. 267, 269, we declared:

"Notwithstanding the First National Bank had a right to demand payment of the certificate in cash, it refused to do so and exchanged it for a draft on the Chicago bank. Thereafter the relation between the parties was clearly that of creditor and debtor. The trust fund was surrendered, * * *"

It must be borne in mind that the original understanding between the claimant and the Moravia Bank was that, in the event the claimant was unsuccessful in procuring the contracts for the highway work, and the certified checks be surrendered by the state highway commission to the claimant, then remittance was to be made by the bank to the claimant by draft; and the written request made by the claimant to the bank was for the issuance of a draft. Under such circumstances, there was no trust fund after the issuance of the draft. In Leach v. Battle Creek Savings Bank, 202 Iowa 875, 211 N. W. 527, 528, we declared:

"It will be observed that the remittance was in the exact form requested by appellee. * * * Under such circumstances, the fund in the hands of the bank lost its character as a trust fund, and the relation between the parties at once became that of creditor and debtor."

For the foregoing reasons, there is no merit in claimant's contention that he is entitled to a preference under the theory of a trust fund.

The appellant's second contention is that his claim should be classified as a "preferred claim" under section 11, c. 30, 43d Gen. Assembly. The trial court held against him as to this contention, but confirmed the report of the receiver, classifying his claim as that of a depositor. The receiver has not appealed. Section 9239, Code 1931, provides that the assets of the bank "after the payment of the expenses of liquidation and distribution shall be ratably distributed among the creditors thereof, *giving preference in payment to depositors.*" (Writer's italics.) Section 11, c. 30, 43d Gen. Assembly, provides:

"Any draft, or cashier's check issued and drawn against actual existing values by any bank or trust company prior to its failure or closing and given in payment of clearings and any money paid in the usual course of business to any bank, or trust company for the purchase of a draft for the bona fide transfer of funds *shall be a preferred claim against the assets of the bank or trust company*." (Writer's italics.)

If the claimant is ·entitled to have his claim classified as a "preferred claim" under the provisions of the statute last above quoted, then we would have for determination the question: Over what other claims or demands should it be given a preference? We would then have for determination the question as to whether the claim should have priority over depositors.

▮ Is the claimant entitled to have his claim classified as a "preferred claim" under the provisions of section 11, c. 30, 43d Gen. Assembly? We answer in the negative. It will be noted that the aforesaid section 11, c. 30, 43d Gen. Assembly, consists of two parts. In so far as the instant case is concerned, the first part applies to "any draft * * * issued * * * by any bank * * * prior to its failure or closing and given in payment of clearings." If the draft in the instant case was not issued by the bank in payment of "clearings", then the claimant is not entitled to have his claim classified as a "preferred claim" by reason of the first portion of the statute. The word, "clearings", relates only to a transaction between banks. A clearing house has been defined as:

"An ingenious device to simplify and facilitate the work of the banks in reaching an adjustment and payment of the daily balances due to and from each other, at one time and place, on each day. In practical operation it is a place where the representatives of all the national banks in this city meet, and, under the ·supervision of a competent committee or officer selected by the associated banks, settle their accounts with each other, and make and receive payment of balances, and so '*clear*' the transactions of the day for which the settlement is made."

See Crane v. Fourth St. Nat. Bank of Philadelphia, 173 Pa. 566, 34 A. 296; National Exchange Bank v. National Bank of North America, 132 Mass. 147; Philler v. Patterson, 168 Pa. 468, 32 A. 26, 47 Am. St. Rep. 896; Anderson's Law Dictionary. It is a matter of common knowledge that in the smaller cities and towns represent-

atives of the various banks therein meet at a certain hour each day and settle their accounts with each other, and make and receive payment of balances due from one to the other. This transaction in banking parlance is commonly called "clearing". Expert testimony to this effect was received, without objection, during the trial of the instant case. It seems quite clear that the plaintiff is not entitled to have his claim classified as a "preferred claim" under the first part of said section.

The second part of the statute applies to "any money paid in the usual course of business to any bank * * * for the purchase of a draft for the bona fide transfer of funds." The decisive question at this point is: Was there any money paid for the purchase of the draft? The apparent purpose of this portion of the statute is to give preference to "*money paid* for the purchase of a draft" for the purpose designated. Such purpose of the statute would not be subserved by the exchange of checks for a draft. Under the record of this case, when the claimant exchanged the checks for the draft, he did not pay *money* for a draft, but only exchanged one credit for another. The legislature in this portion of the statute did not give the draft the unqualified status of a preference. It gave that status only to "*money paid* in the usual course of business * * * for the purchase of a draft" for the purpose designated. What gives the purchaser a preference is not the issuance of a draft, *but the fact that money is paid for the draft.* The question at this point is not whether the draft was paid for, *but whether money was paid for it.* It is quite apparent that no money was paid for the draft. The appellant relies on Andrew v. Farmers State Bank of Grand River, 212 Iowa 1375, 238 N. W. 425, 426, but from a careful reading of the cited case, it clearly appears that *money* was paid for the draft. We said:

"The evidence discloses that the draft in suit was bought by the claimant with *money* paid in the usual course of business to the Farmers State Bank of Grand River, which draft was to be used by claimant for a bona fide transfer of funds. * * * In the case at bar, one Francis Burchett left $834 at the Farmers State Bank of Grand River. This was the property of the claimant Jones who knew the money was in the bank for his benefit. Jones took $134 of this amount, placed it in his checking account at the Farmers State Bank at Grand River, and thereby became a depositor in said bank and established a relationship of debtor and creditor between him

and the bank as to this amount. The balance ($700) was used by him to purchase at said bank a draft which he intended to deposit in the Murray State Bank of Murray, Iowa."

What is there said about drafts and other forms of commercial paper being accepted in the usual course of business, as in place of money, relates only to the mode of transfer of the fund from the one bank to the other.

The claimant contends that the transaction by which he surrendered the checks and received the draft was equivalent to the payment of money for the draft. In support of this contention, he relies upon Messenger v. Carroll Trust & Savings Bank, 193 Iowa 608, 187 N. W. 545, 546. In this case there was involved a claim for preference. A creditor had drawn a sight draft upon its debtor, and sent the same, with a bill of lading attached, to a collecting bank, with instructions to collect and remit. The draft and bill of lading were presented to the consignee, who drew its check upon its own account in the collecting bank for the payment of the sight draft. It had an account at said time in the bank in excess of the amount of said sight draft. Its check was charged against this account. The amount of the sight draft was $1,411.98. At the time when the check was received by the bank, it had not less than $15,000 cash on hand. We said:

"* * * this method of collection was the full equivalent of the payment of money by the Swaney Company, [the consignee] * * * We deem it clear that the net result of the transaction of payment by the Swaney Company and the receipt thereof by the collecting bank was the same as though the Swaney Company had drawn the currency into its own hands by means of check, and had thereupon delivered the same to the collecting bank in payment of the sight draft."

The claimant does not cite Andrew v. State Bank of Dexter, 204 Iowa 565, 215 N. W. 742, and Leach v. Farmers Savings Bank of Hamburg, 204 Iowa 1083, 216 N. W. 748, 65 A. L. R. 679, but our holding in said two cases is identical with our holding in the Messenger case, and based upon the same reasoning. It is apparent, however, that the bank in each case had sufficient cash on hand to make the payment had money been demanded. In the State Bank of Dexter case, 204 Iowa 565, 215 N. W. 742, we said:

"When such officer [the receiver] took charge of said banking concern, there were on hand therein cash funds in excess of the amount of the check, and such quantity of cash, according to the assumption of the parties, was at all times in the bank from the moment of the execution and delivery of said check to and until the date last named."

In the Farmers Savings Bank of Hamburg case, 204 Iowa 1083, 216 N. W. 748, 750, 65 A. L. R. 679, we said:

"When the city treasurer presented the county treasurer's check on these funds, it is therefore apparent that, had he requested cash on the county treasurer's check, there was actual money in the bank far in excess of that necessary to meet the check."

It will thus be noted, that in each of the three cited cases, the bank had sufficient money or cash on hand with which to pay the obligation had money been demanded. And we quite properly held that the law does not require the doing of idle or useless things. But we have a situation quite different in the instant case. As will be noted from the statement of facts, it is conclusively established that the bank did not have the cash or money at the time of the issuance of the draft to pay the checks had money been demanded. Therefore, the principle announced in the foregoing cases cannot, in any event, control the instant case.

In the late case, Poweshiek County v. Merchants National Bank of Grinnell, 209 Iowa 467, 228 N. W. 32, we held that the principle announced in the Messenger case, and subsequently followed in other similar cases, does not apply unless the record shows a sufficient amount of cash on hand in the bank to make payment of the checks at the time of the transaction if demanded. Also see Wells Oil Company v. Marcus Oil & Supply Company, 206 Iowa 1010, 221 N. W. 547, 65 A. L. R. 1145.

In view of the record that the bank did not have sufficient cash on hand on June 30th, the date of the issuance of the draft, to pay the checks had money been demanded, it must be held that the claimant did not pay money, nor the equivalent of money, for the draft. Therefore, he is not entitled to have his claim classified as a "preferred claim" under the latter portion of section 11, c. 30, 43d General Assembly.

Our holding makes it unnecessary to consider the right of priority as between one entitled to a "preferred claim" under section

11, c. 30, 43d Gen. Assembly, and a depositor under section 9239, Code 1931. The receiver has not appealed from the action of the court confirming the classification of the claim as that of a depositor.

For the foregoing reasons, the judgment of the trial court is hereby affirmed.

STEVENS, C. J., EVANS, DE GRAFF, KINDIG, BLISS, and CLAUSSEN, JJ., concur.

FAVILLE and ALBERT, JJ., dissent.

FAVILLE, J., (dissenting)—I cannot concur in the majority opinion in this case.

It is perfectly clear from the record that the claimant had no intention whatever of becoming a general depositor in the Moravia Bank, and did not in fact become such. He made a specific deposit for a specific purpose, recognized and understood by both the bank and himself. Townsend v. Athelstan Bank, 212 Iowa 1078, 237 N. W. 356, and cases cited therein. He drew his check on his account in the Omaha Bank for the sole purpose of securing from the Moravia Bank the certified checks to be used for the one specific purpose of supporting his bid with the state highway commission. As soon as that purpose terminated he did the very thing contemplated and understood by the parties at all times, namely, surrendered said certified checks and immediately endeavored to transfer the funds which had been so turned over to the Bank of Moravia back to the Bank of Omaha, from which they had been taken for this one specific purpose.

I think the bank held the funds on such specific deposit as trustee, under our prior decisions.

Furthermore, I think the claimant clearly comes within not only the purpose and intent but also the clear language of chapter 30 of the Acts of the 43d General Assembly, and that he was entitled to have his claim classified as a preferred claim under said statute.

Mr. Justice ALBERT joins in this dissent.