D. W. BATES, Superintendent of Banking, Receiver, Appellant, v. FARMERS & MERCHANTS SAVINGS BANK of Durant, Appellee; AMANDA ALPEN, Claimant, Appellee.

No. 42658.

DECEMBER 11, 1934.

Edward L. O'Connor, Attorney-general, Lehan T. Ryan, Assistant Attorney-general, and Marion C. Hamiel, for appellant.

Lane & Waterman, for claimant appellee.

ALBERT, J.—On July 23, 1931, the Farmers & Merchants Savings Bank of Durant, Iowa, closed its doors, and on July 31, 1931, L. A. Andrew, superintendent of banking, was appointed receiver, and was later succeeded by D. W. Bates as such superintendent and receiver.

Amanda Alpen, in her individual capacity and as guardian of Arnold E. Alpen, a minor, filed claims in said receivership, which will be later set out. The receiver classified such claims as depositors' claims. Objections were filed by her, and, on hearing, the district court allowed these claims as preferred. From this ruling of the district court the receiver appeals.

The case is submitted on a stipulation of facts, the material part of which is that the claimant was a depositor in the aforesaid bank, carrying a private deposit of her own and one as guardian of said minor. On or about the 21st day of July, 1931, the cashier of said bank is supposed to have shot himself, and Amanda Alpen learned of this fact the next day. Upon her return to the farm she had under consideration the question of whether or not she should withdraw her funds and place the same elsewhere. In discussing the matter with her brother, she decided to transfer her funds to Walcott, and he also advised her to take drafts instead of getting the money in cash, so as not to take the chance and responsibility of losing any money while transferring it. On the 23d of July, 1931, she went to the banking office of the aforesaid bank, and in the

afternoon of that day she talked with the assistant cashier of the bank and told him she wished to withdraw both of said accounts then on deposit, and asked whether or not it would be all right to do so. He told her that it would be and that she could have her money. The claimant then asked whether or not she could have drafts instead of cash, and the cashier told her she could. She then signed checks for the deposits in each of said accounts, and the same was entered upon her passbooks, and two drafts were issued to her, both bearing date of July 23, 1931, her individual draft being for $4,127.04, drawn in her favor, and the other being for the sum of $5,769.80, drawn in her favor as guardian, both drafts being drawn on the American Commercial & Savings Bank of Davenport. It is further stipulated that the said claimant purchased these drafts for the purpose of transferring her funds from the aforesaid bank at Durant to the Walcott Trust & Savings Bank of Walcott, Iowa, and she deposited the said drafts in the Walcott bank on the same afternoon. These drafts were duly presented to the American Commercial & Savings Bank of Davenport on the following day and were dishonored because the drawer bank was closed at the time.

The Farmers & Merchants Savings Bank, at the close of business on July 23, 1931, had on hand in cash the sum of $14,788.02, and a credit with the American Commercial & Savings Bank of Davenport in the sum of $96,601.17. The bank continued to do business during said day of July 23, 1931, but it failed to open on the morning of July 24. The claimant had no knowledge of the solvency or insolvency of the Durant bank at the time she purchased said drafts, and no member of her family was connected with the bank in any capacity, and she had no knowledge that the bank would be closed on the following day or that the drafts would not be paid when presented. The court, in its judgment entry, included the following:

"The Court specially finds that it was the intention of the claimants, Amanda Alpen individually and as Guardian, to use the drafts in question for the *bona fide* transfer of funds to the bank in Walcott; the acts of the claimant in the instant case leave no room for doubt but that her intention was to effect an immediate transfer of the cash she could have drawn in Durant to the bank in Walcott, and that she actually did on the same afternoon take the drafts to Walcott and did deposit them there." .

The crux of this whole case lies in the application of section 11, chapter 30, of the Acts of the Forty-third General Assembly, as amended by chapter 202 of the Acts of the Forty-fourth General Assembly (section 9239-c1, Code 1931), as follows:

"Any draft drawn and issued by any bank or trust company prior to its failure or closing and given in payment of clearings and any money paid in the usual course of business to any bank, or trust company for the purchase of a draft for the bona fide transfer of funds shall be a preferred claim against the assets of the bank or trust company."

It is with the latter provision of said law that we are concerned.

The bulk of appellant's argument is devoted to an interpretation of the phrase "any money paid". As heretofore shown, these drafts were procured by Amanda Alpen's drawing checks on her respective deposits in the Durant bank and taking the drafts in controversy therefor. Appellant argues strenuously that this transaction does not come within the provisions of the aforesaid law because the drafts were not procured by money paid in the usual course of business.

We had occasion to review our numerous cases on this question in the case of Andrew v. Farmers & Merchants Savings Bank, 215 Iowa 1336, loc. cit. 1345, 245 N. W. 226, 230. We there reviewed all our previous holdings, and said:

"It will thus be noted that in each of the three cited cases, the bank had sufficient money or cash on hand with which to pay the obligation had money been demanded. And we quite properly held that the law does not require the doing of idle or useless things. But we have a situation quite different in the instant case. As will be noted from the statement of facts, it is conclusively established that the bank did not have the cash or money at the time of the issuance of the draft to pay the checks had money been demanded. Therefore, the principle announced in the foregoing cases cannot, in any event, control the instant case."

The doctrine here laid down is a summary of previous decisions of this court, starting with the case of Messenger v. Carroll Trust & Savings Bank, 193 Iowa 608, 187 N. W. 545, in which we held that, where the bank had a sight draft on the Swaney Company, and on presenting the same to it the Swaney Company drew a check

against its account in the presenting bank, where the Swaney Company had sufficient funds on deposit to meet the check, there was an augmentation of the assets of the bank in precisely the same manner as the delivery of currency would have. effected.

We had occasion to refer to this same kind of proposition in the case of Leach v. Farmers Savings Bank, 204 Iowa 1083, 216 N. W. 748, 65 A. L. R. 679, where the county treasurer had money on deposit in said bank and he issued a check to the city treasurer for said funds, which check was presented to the bank and credited to the city's account. We there said (loc. cit. 1088) :

"* * * it is therefore apparent that, had he requested cash on the county treasurer's check, there was actual money in the bank far in excess of that necessary to meet the check. The law does not require the doing of idle things."

There are several other cases which touch upon this same proposition, which are gathered together in the aforesaid Andrew v. Farmers & Merchants Savings Bank, supra.

The tendency of all our cases,—in fact, the holdings thereof,—is that, where one draws a check against his account in the bank which does not exceed the amount of his deposit, and takes a draft therefor, and the bank has sufficient funds on hand to meet the check, the requirement of the aforesaid statute is met, and that "money" is paid for the draft within the meaning of said statute. See, further, Andrew v. Helmer & Gortner State Bank, 217 Iowa 232, 251 N. W. 860. Therefore, so far as this question is concerned, the ruling of the district court was right.

It is further urged that the money was not withdrawn within the meaning of the statute, with the bona fide intention to transfer the same. The stipulation of facts, however, shows that the court was right in its conclusion that Amanda Alpen had, at the time she drew the funds, a bona fide intention to transfer the same within the meaning of the statute. The cases cited by the appellant are all cases where the fact situation showed that there was no bona fide intention to transfer the funds, and hence have no application.

It is further contended that this statute limits the amount to which the preferred creditor is entitled to the cash on hand when the bank went into the hands of a receiver. We think that this contention is erroneous. We are not dealing here with the general theory of preference in any way, but are dealing purely with the

statutory provision, and this statute provides that the claim "shall be a preferred claim against the assets of the bank," and we have no disposition to limit the application of the statute. The cases of Leach v. Farmers Savings Bank, 205 Iowa 114, 213 N. W. 414, 217 N. W. 437, 56 A. L. R. 801, and Leach v. Battle Creek Savings Bank, 205 Iowa 971, 219 N. W. 59, were not decided under this particular statute; in fact, the statute was passed and amended after the afore- said cases were decided.

We find no error in the ruling of the court allowing these claims as preferred claims against the assets of said bank.—Affirmed.

MITCHELL, C. J., and KINTZINGER, KINDIG, DONEGAN, and EVANS, JJ., concur.