L. A. ANDREW, State Superintendent of Banking, Appellant, v. FARMERS STATE BANK OF GRAND RIVER et al., Appellees.

No. 41110.

OCTOBER 20, 1931.

John Fletcher, Attorney-general, Oral S. Swift, Assistant Attorney-general, and W. S. McCaull, for appellant.

Rolla Shewmaker, for appellee claimant.

O. M. Slaymaker, and R. E. Killmar, Amici Curiae.

De Graff, J.—The plaintiff-appellant herein, L. A. Andrew, is the statutory receiver (Sec. 9242, Code, 1927) of the Farmers State Bank of Grand River, Iowa, insolvent. On January 29, 1931, the claimant, J. O. Jones, filed his claim in the sum of $700 in the receivership matter and prayed that his claim "be made a preferred claim against the assets of the Farmers State Bank of Grand River then in the hands of the receiver." The preference was predicated on Section 11, Chapter 30, Acts of the 43d G. A. The primary facts were stipulated and it was agreed that the Farmers State Bank of Grand River, Iowa, was a corporation organized under the laws of the State of Iowa to do a general banking business and was doing a general banking business at Grand River on the 3d day of November, 1930. The bank closed its doors on November 28, 1930, and on December 3, 1930, the State Superintendent of Banking, L. A. Andrew, was appointed receiver of said bank. It was stipulated that at said time the bank was insolvent and that there was in the hands of the receiver a sum sufficient to pay the $700 claim of J. O. Jones, if the same is found to be a preferred claim.

The evidence discloses that J. O. Jones purchased from the Farmers State Bank of Grand River on the third day of November, 1930, a draft in words and figures as follows:

"Farmers State Bank        72-1101                    No. 7828
                                Grand River, Ia., Nov. 3, 1930.
    Pay to the order of J. O. Jones                   $700.00
    Farmers State Bank
        Grand River, Iowa      —   —   700 and 00 cts.    Dollars
Central National Bank
and Trust Company
        Des Moines, Iowa.

                                          A. E. Blair
                                              Cashier."

It was stipulated that J. O. Jones was the owner and holder

of said draft and owner of said claim and that same was due and unpaid. There seems to be some dispute between the respective attorneys in this cause whether the case is in equity or in law. The cause was tried to the court and was originally commenced by L. A. Andrew, Superintendent of Banking of the State of Iowa, against the Farmers State Bank of Grand River, to have a receiver appointed for said bank. The plaintiff was appointed as the receiver and J. O. Jones filed in the receivership proceeding a claim predicated on the draft heretofore set out wherein he asked a preference. Subsequently, the receiver of said bank classified the Jones claim as a general claim to which Jones filed objection. For the purposes of this appeal, we will view the case as in equity. The trial court determined from the evidence that there were ample assets in the hands of the receiver to pay the claim of the applicant in full and to pay all other claims which were entitled to a preference and entered findings, judgment, and decree to that effect and adjudged that the claim of J. O. Jones be established as preferred and ordered the receiver to pay the said applicant his claim of $700 before he paid anything to the depositors or general creditors. It is from this judgment and order that the appellant-receiver appeals.

Our first inquiry necessarily concerns itself with the involved statutory provision (Sec. 11, Chap. 30, Acts of the 43d G. A.) which reads:

"Any draft, or cashiers' check issued and drawn against actual existing values by any bank or trust company prior to its failure or closing and given in payment of clearings and any money paid in the usual course of business to any bank, or trust company for the purchase of a draft for the bona fide transfer of funds shall be a preferred claim against the assets of the bank or trust company."

It may be pointed out at this time that Section 11 of Chapter 30 aforesaid was amended by the 44th G. A., Chapter 202, by striking from lines 2 and 3 of said Section 11 the words "or cashiers' check issued and drawn against actual existing values" and inserting in lieu thereof the words "drawn and issued." The amended section is found in Section 9239-c1, Code of 1931.

Chapter 202, Acts of the 44th G. A., was approved April 3, 1931, and became effective after publication thereof on April 9, 1931.

It is apparent that prior to the enactment of Chapter 30, the instant claimant's status would have been that of a general creditor and the relation of debtor and creditor would have existed between the claimant and the bank. The decisions of this court prior to the enactment of said Chapter 30 are sufficient to establish the foregoing statement of legal principle. Danbury State Bank v. Leach, 201 Iowa 321; Leach v. Citizens State Bank of Arthur, 202 Iowa 879; Leach v. Iowa State Savings Bank, 204 Iowa 497. These and similar decisions undoubtedly caused the legislature to enact Chapter 30, Acts of the 43d G. A., in an attempt to remedy the apparent injustice of such a rule and to recognize that a draft drawn and issued under the conditions named therein constitutes a preferred claim against the receiver of an insolvent bank. In passing it may be said that Chapter 30, aforesaid, prior to the instant appeal has called for interpretation but once in the court. It was held that the legislative intent in the enactment of this Chapter was not applicable to private banks. See Ellis v. Citizens Bank of Carlisle, 211 Iowa 1082.

The evidence discloses that the draft in suit was bought by the claimant with money paid in the usual course of business to the Farmers State Bank of Grand River, which draft was to be used by claimant for a bona fide transfer of funds. There were ample assets of said bank to pay said draft. It is argued by the appellant that Section 11, Chapter 30, 43d G. A., should be given a strict construction by virtue of Section 64, Code, 1927. We do not so construe said section. Section 64, supra, reads as follows:

"Common-law rule of construction. The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this code. Its provisions and all proceedings under it shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice."

In the case at bar, one Francis Burchett left $834 at the Farmers State Bank of Grand River. This was the property of the claimant Jones who knew the money was in the bank for his benefit. Jones took $134 of this amount, placed it in his checking

account at the Farmers State Bank at Grand River, and thereby became a depositor in said bank and established a relationship of debtor and creditor between him and the bank as to this amount. The balance ($700) was used by him to purchase at said bank a draft which he intended to deposit in the Murray State Bank of Murray, Iowa. Drafts and other forms of commercial paper are accepted in the usual course of business as and in place of money. The trial court held that the draft in controversy was paid with money and that the draft was purchased in the usual course of business. This finding cannot be and is not questioned. One of the functions of the instant bank was to draw and issue drafts. It sold drafts and conducted a general banking business. The evidence shows that the purpose and idea in taking the draft was to transmit the money to the bank at Murray. The claimant Jones testified (no one contradicting):

"When I bought that draft, Mr. Blair (the cashier) wanted to sell me a note on a lady who is a close neighbor and he told me that if I wanted more security he thought he could get a mortgage on her real estate. Her land adjoins mine and I wanted a mortgage on her land on the 40 near me, and I told Mr. Blair if he could get a mortgage on the 40 owned by this lady I would loan her $700 or if she wanted to sell that 40, I would buy it. Mr. Blair said to me 'You hold the draft and we will see if we can get a mortgage or if she will sell the place.' I said 'all right.' In about a week after, the President of the Farmers State Bank came in. He said he would go to see this land and a week or ten days after that he said she would not give a mortgage on the land but would sell it for $85 an acre. I said 'I cannot pay that for it, but that I would go and look over it and see what I felt I could pay for it, and asked Mr. Switzer (the President) to go and see the lady and see if he could get her down any.' He said 'all right.' He went away and I looked at the land. I decided I couldn't give her over $75 an acre. In about a week or ten days Mr. Switzer came out there again and said the lady would take $80. He said 'you got a $700 draft and all we want you to pay is $1000. That gives us our money.'"

The claimant Jones was holding the draft all the time the President of the Bank was trying to negotiate this trade and was

doing so at the President's request. The bank closed shortly thereafter. Jones further testified: "I would have cashed the check had it not been for the request of Mr. Switzer and Mr. Blair, and if I hadn't been holding in on this deal I would have cashed it and drawn interest." The evidence discloses the reason that Jones intended to deposit the draft in the Murray State Bank. It appears that Jones would have been compelled, under the rules of the Farmers State Bank, to allow the money, if placed on a time deposit, to remain in the bank for six months to draw interest, while in the Murray Bank, interest was allowed and payable if the money remained in that bank for three months. It is seriously urged by the appellant that Jones held the draft for twenty-five days "not knowing whether he would use it to make a deposit in the bank in Murray, Iowa." The delay on the part of Jones is chargeable to the officers of the Farmers State Bank and their representations to Jones relative to the note and the possible sale of the land owned "by the lady." This evidential fact simply bears on the question of the purchaser's intent. The statute in question contemplates if the money is paid to a bank to buy a draft and it is intended that the draft was to be used by the purchaser for a bona fide transfer of funds, that is sufficient. The fact that the draft in question named Jones as payee and not a third party is not material in the instant case. The law (Chapter 30, Acts of the 43d G. A.) was intended to prefer drafts that were paid for with money and purchased for the bona fide transfer of funds. The law does not specify a time limit and in the instant case the delay on the part of the claimant in depositing the same in the Murray State Bank, as he intended to do, was caused by the statements and representations of the officers of the Farmers State Bank and for no other reason. The trial court said in the opinion filed: "It is plain to this court that this claim in this case should be preferred in favor of J. O. Jones." With this conclusion this court concurs. Wherefore, the judgment order from which this appeal is taken is affirmed.

FAVILLE, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur.