L. A. ANDREW, State Superintendent of Banking, Appellee, v. SAVINGS BANK OF LARCHWOOD, Defendant; CITIZENS NATIONAL BANK & TRUST COMPANY OF SIOUX FALLS, SOUTH DAKOTA, Appellant.

No. 41186.

APRIL 5, 1932.

Fisher & Riter and Lyon, Bradford & Grigsby, for appellant.

John Fletcher, Attorney-general, and Warren H. White, for appellee.

ALBERT, J.—The Citizens National Bank & Trust Company of Sioux Falls is a national banking corporation, and the Savings Bank of Larchwood a state banking corporation under the laws of the state of Iowa.

On December 12, 1930, the Sioux Falls bank was the holder in due course of checks in the amount of $1121.21, drawn by depositors of the Savings Bank of Larchwood. These checks were forwarded directly to the Larchwood Bank, and on receipt of same, it charged the checks to its respective depositors' accounts, and on December 13th following, drew a draft, in favor of the Sioux Falls Bank, on the Live Stock National Bank of Sioux City for the sum of $1121.01, and forwarded the same to the Sioux Falls bank.

Under similar circumstances and conditions, on or about December 15, 1930, the Larchwood Bank drew a draft on the Live Stock National Bank of Sioux City in favor of the Sioux Falls Bank in the sum of $169.25, and forwarded the same to the Sioux Falls Bank. The Sioux Falls Bank, through the usual channels, presented both of said drafts to the Live Stock National Bank of Sioux City, and payment was refused.

On December 16, 1930, the Larchwood Bank closed, and went into the hands of the superintendent of banking as receiver thereof, and the Live Stock National Bank of Sioux City was notified by the receiver not to pay any outstanding drafts, this

being one of the reasons of the refusal of the Sioux City Bank to honor these drafts.

It is stipulated that at the time of the closing of the Larchwood Bank, there were outstanding drafts drawn by that bank on the Sioux City bank in the sum of $1674.91. It was further stipulated that at the time of the closing of the bank there was on deposit in the Live Stock National Bank of Sioux City to the credit of the Larchwood Bank, the sum of $313.88. In due time, the Sioux Falls Bank filed its claim on these two drafts with the receiver and asked a preference for such claims.

The matter was tried to the court, which held, in substance, that the Sioux Falls Bank was entitled to share with other holders of drafts outstanding against the Sioux City Bank in the funds on hand in the Sioux City Bank at the time of the closing of the Larchwood Bank, to wit, $313.88, and after taking its pro-rata share from the last-named amount, the balance of the claim should be allowed as that of a general creditor. From this determination of the court, the Sioux Falls Bank appealed.

In 1926, in the case of Danbury State Bank v. Leach, 201 Iowa 321, we had before us a clearance transaction in which a draft was issued under circumstances similar to those in the instant case, and we there held that the holder of the draft was not entitled to a preference as against the assets of the insolvent drawing bank. We reiterated this doctrine in many subsequent decisions.

In 1929 the legislature passed an act (Chapter 30 of the 43 G. A.) affecting banking in this state. Among other provisions of this Act was section 11, reading as follows:

"Any draft, or cashiers' check issued and drawn against actual existing values by any bank or trust company prior to its failure or closing and given in payment of clearings and any money paid in the usual course of business to any bank, or trust company for the purchase of a draft for the *bona fide* transfer of funds shall be a preferred claim against the assets of the bank or trust company."

It is the claim of the Sioux Falls Bank that under this provision of the statute they are entitled to a preference for the full amount of the two drafts held by them.

The first question raised is an interpretation of this act, and so far as this case is concerned, it has to do with the first part of the act, which reads: ''Any draft, or cashiers' check issued and drawn against actual existing values by any bank or trust company,'' etc. The question is the meaning of the phrase ''against actual existing values.'' To us this phrase has but one meaning. It can not mean that the values referred to are the values in the hands of the issuing bank. It can have no other meaning in the instant case than that this phrase applies to actual ''existing values'' in the Sioux City Bank. In other words, if the Larchwood Bank had no actual existing values in the Sioux City Bank at the time the drafts were drawn, there could be no preference under this section of the statute.

It is true, as argued by the appellant, that the banking situation at the time of the passage of this law and the defects which were sought to be remedied should be taken into consideration, but this would not warrant us in overthrowing the clear, concise and exact statement of the statute. Where a statute clearly expresses the intent of the legislature, there is in fact no room for construction. It is a well known fact that this act of the legislature was prepared and submitted to the legislature by a committee of the bankers' association in this state. They undoubtedly were capable of expressing the ideas they wished to cover in this enactment. They expressed the ideas they had in their minds at that time; but like all laws of a remedial nature, the human mind is not always capable of conceiving and providing for all situations that may arise, as is well illustrated by this case. It was discovered that the situation that existed in this case and some other situations were not covered by the aforesaid section of the statute, and in 1931 the 44th G. A., in Chapter 202, amended the aforesaid section 11 by striking out the words ''or cashiers' check issued and drawn against actual existing values,'' and inserted in lieu thereof the words ''drawn and issued.'' This latter enactment postdated the time of the arising of the cause of action here involved; hence, of course, is not controlling, and is only for consideration as a subsequent expression of the legislature on the same subject. It is of value, however, in the sense that it shows the intent of the legislature to enlarge the scope of the original act, and to include drafts that were not included in the aforesaid section 11.

Appellant's argument, carried to its logical conclusion, would be that the construction we should put upon the original section 11 should be identically the same as the force and effect of said section 11 as amended by the 44th G. A. If it were the intent of the legislature, in enacting the original section 11, to include these drafts as a preference, then the act of the 44th G. A. so far as it affects this question, would be entirely useless. In other words, if the act of the 44th G. A. had gone into operation prior to the time this instant cause of action arose, there would be no question that the Sioux Falls Bank was entitled to a preference; but this latter act not having been in effect at that time, it is our conclusion that the original section 11 can not be enlarged to include the plaintiff's claim as a fully preferred one.

The case of Andrew v. Farmers State Bank, 212 Iowa 1375, is distinguishable on the facts from the case at bar.

We are in a little doubt as to the exact situation, because, under the aforesaid section 11, the preference is based upon actual values in the Sioux City bank at the time the drafts were drawn. To avail itself of this statute, the plaintiff had the burden of showing that at the time the drafts were drawn, there was actual existing value in the Sioux City bank sufficient to meet them, in order to entitle it to a preference. Both parties, however, seem to treat the amount of $313.88 as the amount of actual value in the Sioux City bank at the time the drafts were drawn. We treat the matter accordingly. We think the decision of the district court was right, and the same is—Affirmed.

WAGNER, C. J., and STEVENS, FAVILLE, and DE GRAFF, JJ., concur.