L. A. ANDREW, State Superintendent of Banking, Appellee, v. PILOT MOUND SAVINGS BANK; ROY HINMAN, Appellant.

No. 41540.

NOVEMBER 22, 1932.

Doran, Boone & Doran, for Roy Hinman, appellant.

John Fletcher, Attorney-general, Earl Wisdom, Assistant Attorney-general, and Goodykoontz & Goodykoontz, for appellee.

KINDIG, J.—This appeal involves the question whether the appellant Roy Hinman is entitled to be paid before depositors from the assets of the Pilot Mound Savings Bank now held by the appel-

lee, as receiver thereof. Before September 16, 1931, the Pilot Mound Savings Bank, of Pilot Mound, Iowa, was a banking corporation duly organized and operated as such. On the morning of September 16 in that year, the bank did not open its doors because of insolvency. Thereupon the appellee, L. A. Andrew, was duly appointed the receiver thereof, and is now liquidating the bank's business. Until 3:30 P. M. of September 15, the appellant Roy Hinman had on deposit in the bank a checking account of $444.61, and in addition thereto he held up to that time a certificate of deposit issued by that institution payable to him in the amount of $1,174.52.

At about 3:30 in the afternoon of September 15, in the year in question, the appellant exchanged his certificate of deposit in the aforesaid bank for a draft on the First National Bank of Boone, for $1,174.52. Although the certificate of deposit was thus exchanged for the draft, the appellant did not in any way change his checking deposit in the Pilot Mound Savings Bank. So, when the Pilot Mound Bank failed to open its doors on September 16, the appellant had a checking account therein for $444.61 and a draft drawn upon the First National Bank, at Boone, payable to himself in the sum of $1,174.52.

It is claimed, therefore, by the appellant that he is entitled to a preference in the assets of the Pilot Mound Savings Bank now held by the appellee receiver in the amount of the aforesaid draft. Such preference is claimed upon two theories: First, that at the time the draft was obtained, the president of the Pilot Mound Savings Bank orally assigned to the appellant in the amount of the draft certain assets of said bank then in the First National Bank of Boone; and, second, that under the provisions of Section 9239-c1 of the 1931 Code, the appellant is entitled to a preference on the amount represented by the draft. If there were no oral assignment to appellant of the funds in question, and if the statute above named does not apply to the facts in this case, then the appellant is not entitled to the preference which he claims.

I. According to the stipulation of facts, a Mr. Crouch, who was president and manager of the Pilot Mound Savings Bank, told the appellant on September 15, 1931, that the bank had sufficient cash with which to pay the certificate of deposit above named. The appellant was then attempting to cash the certificate of deposit. Crouch, the president of the last-named bank, after telling appellant of the cash on hand, stated that the bank did not care "to deplete"

its "cash reserve to the extent of paying the certificate." Then the president suggested that the appellant take a draft on the First National Bank in Boone, where the Pilot Mound Savings Bank, according to Mr. Crouch, "had a reserve." In reply, the appellant told the president that he desired to discharge some personal obligations and therefore wanted the cash. Hence, according to the stipulation of facts, the president of the Pilot Mound Savings Bank then declared that the appellant "could promptly get his money through the draft at the First National Bank in Boone."

Further, according to the stipulation, it appears that the aforesaid president then stated to appellant that a draft "operated as an assignment of that much of the" Pilot Mound Savings Bank's "funds in the" First National Bank of Boone, on which bank the draft was to be drawn. Whereupon, the appellant accepted the draft and immediately went to Boone, a few miles from Pilot Mound, in the same county, to cash the draft at the First National Bank. When appellant arrived at the Boone bank, it was after business hours, and the institution was closed for the day. Had he arrived during business hours on that day, the Boone bank, for all that appears, would have cashed the draft.

As before suggested, on September 16, the Boone bank refused to cash the draft because the Pilot Mound Bank had then closed its doors. An oral assignment, if any there is, must be found in the statement of the president of the Pilot Mound Savings Bank that the draft "operated as an assignment." There is no other oral statement of the president or anyone else that could in any way amount to an assignment of any funds in the Boone bank to the appellant. But the officer of the Pilot Mound Savings Bank, when declaring that the draft operated as an assignment, merely stated his own conclusion. See Versteeg v. Hoeven, 214 Iowa 92. Perhaps he was mistaken about the legal effect of the draft, but, however that may be, neither this officer nor the appellant made any contract except that contained in the draft itself. Neither party contemplated a contract extraneous to the draft. Obviously there is nothing in the record indicating the existence of an independent oral agreement for an assignment of funds in the Boone Bank. Whatever assignment there was to be, arose, if at all, under the draft itself. Nothing else was contemplated by either the bank or appellant. At no time did the appellant and the Pilot Mound Savings Bank understand that there was a contract in addition to the draft.

Under the facts and circumstances revealed in the record, it was not contemplated by appellant and the Pilot Mound Savings Bank that there was to be an assignment *pro tanto* of the institution's funds in the Boone bank, unless it arose through the draft. The draft itself did not amount to an assignment *pro tanto* of the Pilot Mound Savings Bank's funds in the Boone bank. Leach v. Mechanics Savings Bank, 202 Iowa 899; Leach v. Battle Creek Savings Bank, 203 Iowa 507; Leach v. Iowa State Savings Bank, 204 Iowa 497.

Consequently, under the entire record, it is apparent that the appellant is not entitled to a preference because of an oral assignment of the Pilot Mound Savings Bank's funds in the Boone bank.

██ II.   Section 9239-c1 of the 1931 Code, relied upon by the appellant, contains the following provisions:

"Any draft drawn and issued by any bank or trust company prior to its failure or closing and given in payment of clearings and any money paid in the usual course of business to any bank, or trust company for the purchase of a draft *for the bona fide transfer of funds* shall be a preferred claim against the assets of the bank or trust company." (The italics are ours.)

That section, the appellant argues, entitles him to a preference over depositors because the draft in question was purchased by him with money paid the Pilot Mound Savings Bank "in the usual course of business" "for the bona fide transfer of funds." See Andrew v. Savings Bank of Larchwood, 214 Iowa 204; Andrew v. Farmers State Bank of Grand River, 212 Iowa 1375. Money was thus paid, the appellant asserts, because in purchasing the draft he first cashed the certificate of deposit. When cashing the certificate of deposit, the appellant maintains that he in effect, although not actually, first drew the amount of the certificate out of the Pilot Mound Savings Bank and then afterward purchased the draft therewith. Whether this is true or not, we now neither decide nor suggest. For the purpose of this discussion, however, it is here assumed, without deciding or suggesting, that the appellant first cashed the certificate of deposit, as he contends, and then immediately used the proceeds to purchase from the Pilot Mound Savings Bank the draft in question.

Nevertheless, appellant has not brought himself within the provisions of Section 9239-c1, above-quoted, because he did not purchase the draft "for the bona fide transfer of funds." Manifestly the

appellant did not purchase, and the Pilot Mound Savings Bank did not issue, the draft for the purpose of making a bona fide transfer of funds. On the other hand, the parties to the transaction used the roundabout method of a draft transaction with the hope of enabling the Pilot Mound Savings Bank to pay, and the appellant to collect, the moneys represented by the certificate of deposit. The intent of the appellant, when accepting the draft, was to collect the amount due on the certificate of deposit. He did not desire the transfer of funds to Boone. There was but one purpose on appellant's part in accepting the draft, and that was to find a method whereby the certificate of deposit could be collected from the Pilot Mound Savings Bank.

Likewise, in issuing the draft, the Pilot Mound Savings Bank was not concerned about transferring funds to Boone, but rather it was anxious to assist appellant, if it could, in collecting the aforesaid certificate of deposit. Neither appellant nor the Pilot Mound Savings Bank had any thought of making, or desire to make, a "bona fide transfer of funds," as contemplated by Section 9239-c1 of the 1931 Code. In truth, the transaction did not involve a bona fide transfer of funds, but rather it was an attempt, as before said, to enable the appellant in a roundabout way to collect the amount due him on the certificate of deposit. A collection of the certificate of deposit, then, as distinguished from the transfer of funds, was the purpose of the draft.

Under the record, therefore, the draft does not entitle the appellant to a preference under the aforesaid statutory provision. So far as the appellant is concerned, he, in practical effect, is in the same position now as he would have been had he still held the certificate of deposit. When obtaining the draft under the circumstances, he did not change his position in equity so far as the preference contemplated by the statute is concerned. The district court allowed the appellant the same standing as a depositor. No appeal was taken by the appellee receiver. Whether the appellant is entitled to the preference of a depositor, we do not now decide. He, in any event, is entitled to no more. Consequently, we leave the appellant where the district court placed him. We, because the point is not here involved, do not decide whether the statute above-named, in the case of the draft contemplated therein, does place the purchaser thereof in a higher preference than that held by a depositor. See Andrew v. Turin Savings Bank, 214 Iowa 590.

Wherefore, the judgment and decree of the district court is affiirmed.—Affirmed.

Stevens, C. J., and Evans, Bliss, and Claussen, JJ., concur.