L. V. IIAMS, Appellant, v. L. A. ANDREW, Superintendent of Banking, Receiver, Appellee.

No. 41599.

MARCH 7, 1933.

O. M. Slaymaker and R. E. Killmar, for appellant.

E. K. Jones, for appellee.

UTTERBACK, J.—On the 10th day of December, 1930, the Murray State Bank of Murray, Iowa, discontinued business. The defendant L. A. Andrew, Superintendent of Banking of the State of Iowa, was appointed, by decree of court, receiver of said bank. Thereafter, the appellant filed claim for preference against the receiver of said bank on a bank draft issued on the 12th day of February, 1930, by said bank to the claimant. The draft was for $777.98, drawn by said bank on the First National Bank of Chicago, Illinois. The claimant paid for said bank draft with a draft issued by a bank at Peru, Iowa, on September 6, 1929, payable to the claimant and drawn upon the Iowa-Des Moines National Bank & Trust Company.

It is appellant's contention that he purchased the draft in good faith for the purpose of using same to buy live stock at the Stock Yards in Omaha, Nebraska, and thereby bringing himself within the terms of the statute, and that he, therefore, is entitled to have his claim allowed as a preferred claim against the assets of the insolvent bank now in the hands of the appellee, as receiver.

On the other hand, the contention of the appellee is that the appellant did not purchase the draft in question in the usual course of business for the bona fide transfer of the funds from the Murray State Bank, but for the purpose of concealing the funds represented by said draft from the creditors of the claimant, and that he exchanged the draft of the Bank at Peru, Iowa, for the draft of the Murray State Bank because he thought the Murray bank was a safer bank than the one at Peru.

The material question here presented, therefore, is: Did the claimant purchase the draft in question in good faith for the purpose of transferring the said $777.98, so as to entitle him under the statute above quoted to have his claim established as a preferred claim against the assets of the Murray State Bank, now in the hands of the appellee as receiver?

For the determination of this question, it is necessary for us

to review briefly the evidence offered on the trial of the case. Three witnesses testified at the trial. They were R. A. Walter, formerly assistant cashier of the Murray State Bank, J. F. Blaylock, examiner in charge for the appellee receiver, and L. V. Iiams, the claimant herein.

The witness Walter testified that the draft in question was issued by the insolvent bank on February 12, 1930; that the same was made payable to the claimant; and that claimant paid for same with draft issued by the bank at Peru, Iowa, and drawn on the Iowa-Des Moines National Bank of Des Moines, Iowa, for the same amount; that his bank collected and received from the Des Moines Bank the full sum of $777.98; and that the Murray State Bank closed on the 10th day of December, 1930.

The witness Blaylock testified that the total amount of preferred claims which had been allowed by the court in the matter of the receivership of the Murray State Bank was $338.73, and that the only other preferred claims filed, were one for $20 and this claim; that the time for filing claims had now elapsed; that after paying salaries and other expenses of the receivership, and after payment of the preferred claims had been allowed, there would remain more than $12,000 in the hands of the receiver.

The only other witness was the claimant, who testified that he was sixty-eight years of age; that he had a country school education; that he had known N. C. Hoffman, one of the officers of the Murray State Bank, ever since he was a boy; that he purchased the draft in question on February 12, 1930, for the purpose of using it in buying cattle at the Stock Yards in Omaha, Nebraska; that shortly there-after he took neuritis and that he was "down for probably six weeks", and that he was not able to work for some time after that; that his health during the summer, and up to the time the bank closed, was "just off and on"; that he never cashed the draft or used it for any purpose before the bank closed; that the same was his and that he kept it in his possession; and that the only purpose for which he intended to use same was to take it to Omaha and purchase cattle.

He further testified that on the 22d day of December, 1930, after the Murray bank had closed on December 10th, he took the draft to Murray but was unable to cash same, at which time he filed claim with the receiver; that after he had filed claim against the receiver, he assigned his claim to one I. E. Conrad to secure the payment of

$25, which he had borrowed from the assignee; that later he paid the $25; and that he was at the time of the trial the sole owner of said claim.

On cross-examination, the claimant testified that the Winterset Savings Bank had brought suit against him in the latter part of 1929, and had secured judgment against him about May, 1930; that the Lorimor State Bank had also secured judgment against him; that the same were not honest judgments against him; that he had some time prior thereto transferred some cattle and other live stock to his son, thirty-five years of age, to pay for labor and services which the son had rendered him during the past two years; that he had not had a bank account in any bank for some years; that if he had purchased cattle, it was his intention to pay for them in part with the money represented by the draft, and to give a mortgage on them for the balance; and that he was not afraid of the judgments against him.

The evidence in the case shows that the draft was purchased in the usual course of business. The question of whether the draft was purchased in good faith by the appellant, for the purpose of transferring the funds, depends for the most part upon his own testimony. In this connection it should be noted that the appellant held the first draft issued by the Peru bank for five months and six days; that he used the same to purchase the draft in question in this suit; that the amount of both drafts were the same; that he held the draft in suit, for ten months and three days; that he had been personally acquainted with one N. C. Hoffman, an officer of the Murray bank, all his life; that he considered the Murray bank safer than the Peru bank; that he was named as payee in the draft; that he had no cattle or other live stock in his own name; that he never used the draft to purchase live stock at Omaha; that he had turned ten or twelve cattle and a team of horses to his son in payment of wages; that he had had no bank account in any bank for several years; that a Bank at Winterset, Iowa, had obtained judgment against him; and that a bank at Lorimor, Iowa, had also obtained judgment against him.

The trial court made finding of fact and filed written opinion in the case, in which, among other things, it was stated:

"It is very evident to the court that, under the record, he (claimant) makes upon the witness stand as a witness for himself, there

was another and different purpose than that claimed in the purchase of the draft. He already had a draft which he purchased from the Peru Savings Bank in September. Previous to the purchase of this draft, he carried the draft for three months without having done anything with it, and then purchased the draft here in February, on the 12th, 1930, carried until December, 1930, without any effort being made to use it for what was his express intention—that of buying cattle with the proceeds of that draft.

"The court thinks he had another and a different purpose. That is he may have wanted to save this money and put it in a place where he thought it was safe and secure, which simply relegates him to being a purchaser of a draft and entitled to that classification only.

"The court is of the firm opinion that there is another reason why he would not recover and that is by reason of this assignment which he made voluntarily and no reassignment of it, and the only thing before the court is his unsupported claim for whatever purpose he made it, he afterwards satisfied it, and I. E. Conrad had no claim to the proceeds of the draft.

"The court feels that this draft should be allowed as a general claim only, and that will be the order in connection with this matter of the allowance of this draft."

The court thereafter entered an order in the case in which it is stated:

"The court finds that the draft included in the claim of L. V. Iiams, was not one purchased for the bona fide transfer of funds; that claimant is not entitled to preference thereon, and that said claim should be denied as a preferred claim, but should be established as a depository claim against said trust."

This case is controlled by section 11, chapter 30 of the Acts of the Forty-Third General Assembly, which is now section 9239-c1 of the 1931 Code, which provides as follows:

"* * * Any money paid in the usual course of business to any bank, or trust company for the purchase of a draft for the bona fide transfer of funds shall be a preferred claim against the assets of the bank or trust company." .

This court has heretofore considered the statute above quoted and the question here raised, in Andrew v. Farmers' State Bank of

928

Grand River et al., 212 Iowa 1375, 238 N. W. 425, 427, wherein we said:

"The statute in question contemplates if the money is paid to a bank to buy a draft and it is intended that the draft was to be used by the purchaser for a bona fide transfer of funds, that is sufficient. The fact that the draft in question named Jones as payee and not a third party, is not material in the instant case. The law (chapter 30 Acts of the 43d Gen. Assem.) was intended to prefer drafts that were paid for with money and purchased for the bona fide transfer of funds."

In that case, this court affirmed the action of the district court in allowing a claim on a draft in question in that case, as a preferred claim, stating:

"The law does not specify a time limit, and in the instant case the delay on the part of the claimant in depositing the same in the Murray State Bank, as he intended to do, was caused by the statements and representations of the officers of the Farmers' State Bank, and for no other reason. The trial court said in the opinion filed: 'It is plain to this court that this claim in this case should be preferred in favor of J. O. Jones.' With this conclusion, this court concurs. Wherefore, the judgment order from which this appeal is taken is affirmed."

See, also, Andrew v. Savings Bank of Larchwood et al., 214 Iowa 204, 242 N. W. 80; Andrew v. Turin Savings Bank et al., 214 Iowa 590, 243 N. W. 152; Andrew v. Farmers' & Merchants Savings Bank of Moravia, 215 Iowa ......, 245 N. W. 226; and Andrew v. Pilot Mound Savings Bank et al., 215 Iowa 290, 245 N. W. 329.

From the record in this case, we find that the appellant did not purchase the draft in good faith for the purpose of transferring the $777.98, with the intention of purchasing cattle in the Stock Yards at Omaha, Nebraska. We think his purpose was rather an attempt on his part to place the funds where he thought they would be safer, and further that he was attempting to conceal his property from his judgment creditors.

Under the facts and circumstances shown in the record we hold that the appellant had the status of a depositor and was in the same position as if he had deposited his money in the bank in the usual course of business. The purchase of the draft, under the circum-

stances herein disclosed by the appellant, did not in equity put him in the position of a purchaser of a draft for the good-faith transfer of the funds. Adhering to the rule adopted by this court in former decisions, we find, under the record in the case, that the appellant is not entitled to have his claim established as a preferred claim against the assets of the insolvent bank, now in the hands of the appellee, as receiver.

The district court denied appellant's claim in the sum of $777.98 as a preferred claim, but established same as a general depository claim. With that conclusion, this court agrees. Wherefore, the judgment of the trial court is affirmed.—Affirmed.

KINDIG, C. J., and ALBERT, EVANS, and DONEGAN, JJ., concur.

STEVENS, J., concurs in result.